IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:09CR12 |
| v. | § | |
| | § | |
| FEDERICO EVELIO GARCIA-SANTOS | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
REGARDING DEFENDANT'S MOTIONS TO SUPPRESS**

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Opposed Motions to Suppress Evidence (Dkt. 75 and 76). After considering the evidence and the arguments of counsel presented at the February 11, 2010 hearing, the Court finds that the Defendant's Motion for Suppression of Evidence Seized in Violation of Fourth Amendment Rights (February 2009 Virginia Incident) (Dkt. 75) should be DENIED and the Defendant's Motion for Suppression of Evidence Seized in Violation of Fourth Amendment Rights (April 2004, Memphis, Tennessee Incident) (Dkt. 76) should be GRANTED.

Defendant has been charged with a violation of 21 U.S.C. § 846, conspiracy to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance and 18 U.S.C. § 2 aiding and abetting. At the February 11, 2010 hearing, the Government agreed not to present at trial any evidence relating to the April 2004 traffic stop in Tennessee. Therefore, in light of the Government's stipulation, Defendant's Motion for Suppression of Evidence Seized in Violation of Fourth Amendment Rights (April 2004, Memphis, Tennessee Incident) (Dkt. 76) should be GRANTED. And the Court's analysis herein shall be limited to the February 2009 traffic stop in

Virginia and subsequent search of Defendant's truck.

During the February 19, 2009 search of Defendant's 1999 F-150 truck, Trooper S. R. Homiak found 10 lbs of marijuana and a digital scale. In his written motion, Defendant argues that (1) the search of his vehicle was unreasonable because the length of the stop was excessive, (2) there was no probable cause to search the truck because the Government provided no evidence as to the training or competence of the drug dog used, (3) the search was unreasonable because the Government lacked a warrant, and (4) the Government's loss of the recording of the traffic stop is grounds for suppression.

### EVIDENCE PRESENTED

At the hearing, the Government offered the testimony of Trooper Steve Homiak with the Virginia State Police, who conducted the stop at issue, as well as various pieces of documentary evidence, including photographs of the materials seized during the February arrest. Defendant himself also testified about the search and arrest during the suppression hearing.

Homiak testified that he has been a police officer for over nine years, and, since June 2007, he has been trained and certified as a handler of a dog in canine police unit. Since 2007, Homiak has worked with a dog named Debo, who has also been trained and certified since 2007. During the hearing, Trooper Homiak offered extensive testimony about how Debo alerts and how canine sniff tests and searches are conducted.

According to Trooper Homiak's testimony, he pulled Defendant over on February 19, 2009, because his truck had a cracked windshield and a damaged side mirror. Defendant was driving on I-95 in Virginia.

According to Homiak, once stopped, Defendant admitted to the traffic violations he committed. Trooper Homiak then ran routine checks on Defendant's plates and driver's license. While he was running checks, Homiak asked Defendant some questions. According to the trooper, Defendant told the officer he was unemployed and looking for work as a trucker. Defendant also told him that he was from Laredo, had been in Myrtle Beach, and was in Virginia to pay $85 an unpaid fine for a traffic citation he was previously issued in Virginia. According to Homiak, Defendant stated he was going to Richmond, but could not offer a point of contact in Virginia as to the specific place or address he was going to. Upon further questioning by Homiak regarding the apparent inconsistencies in Defendant's explanation of his visit to Virginia, Defendant said that he was not going to pay the actual traffic ticket fine but a late fee associated with it and that he was required to pay it in person in Virginia.

While the trooper was verifying that the truck's VIN number matched its registration, he looked through the windows inside the truck. Homiak testified that the only things he saw inside the truck were a jacket and some maps. The trooper also noticed that there was a single key in the ignition, with no other keys attached.

Homiak testified that, during his questioning of Defendant, he was suspicious that Defendant was involved in criminal activity. According to Homiak, I-95 is the major artery going up and down the East Coast used for criminal activity. Additionally, the trooper testified that he observed that the vehicle had a Texas plate, which he said was not commonly seen in Virginia. When the trooper ran the plate, he discovered it was registered to an address in Laredo. Homiak testified that he knew Laredo to be border city in Texas and a place used to transport illegal drugs from Mexico.

Homiak testified that Defendant's explanation for his trip to Virginia also raised "red flags" of criminal activity. Primarily, Homiak testified, Defendant's story was inconsistent and did not make sense. Defendant initially said he was going to pay a ticket and then upon further questioning said he was going to pay a late fee. Trooper Homiak also stated that he knew, from his law enforcement experience, that tickets could be paid by phone, online and in offices in Virginia other than Richmond. Homiak testified that it made no sense to him why Defendant would drive from Texas to Virginia to pay an $85 fine in person when he was unemployed and could pay another way.

Homiak also testified that Defendant's lack of luggage for a cross-state trip made him suspicious, as did the fact that there was only a single key in the ignition of the truck. According to Homiak, this indicated to him that the truck was being used for drug transport or illegal activity because there were no house keys on it or anything else to suggest the key chain was for Defendant's personal use. The trooper was also suspicious of Defendant's story in light of his claim that he was not regularly employed anywhere.

According to Trooper Homiak, when Defendant's license check came back, there was a flag on it indicating that it was not clear. He called dispatch to see what the flag on the license indicated, but dispatch was unable to figure out what it meant. Trooper Homiak then asked Defendant if he ever had a ticket or been arrested. In response, Defendant offered Homiak a document indicating that he had been charged with heroin trafficking but that the case had been dismissed.

Without further information regarding the flag on Defendant's license plate, Trooper Homiak decided to give Defendant a verbal warning about his windshield and mirror and told Defendant that he was free to go. Then, Trooper Homiak testified that he asked Defendant if he could ask him a

4

question. Homiak testified that Defendant said yes, and then Homiak asked Defendant whether there were any guns, drugs or large amounts of currency in his truck. According to Homiak, Defendant's demeanor changed when he asked this question. Homiak testified that Defendant became very serious, when he had previously been cooperative. Homiak then asked whether Defendant would consent to him searching the truck and Defendant declined and told Homiak that he would have to get a warrant to conduct any search.

Homiak testified that Defendant's change in demeanor, in addition to the other factors he was already suspicious of, led him to decide that he would run his canine, Debo, around the exterior of the truck. Debo was in Homiak's patrol car. Once the canine was allowed a brief bathroom stop, Homiak ran Debo around Defendant's truck.

Debo alerted positively the presence of a controlled substance in or around the car. Homiak testified that, on the original pass, he alerted to the driver's door by turning his head, which is his strong alert, and that on the second pass gave scratch on the truck's hood, another way he alerts. Homiak testified that Debo had such a strong positive alert when running around Defendant's truck that he had to carry Debo back to the car because he wanted in the truck so badly. Homiak folded the back seat up, found two bundles of marijuana and, under the hood, found a digital scale with marijuana residue. Homiak also found a package of brown paper bags, which he said are used to package and distribute marijuana. According to Homiak, Debo had alerted to both the driver's side and hood of the truck.

According to Trooper Homiak, approximately 15 minutes elapsed between the initial stop and Debo's alert on the truck. Homiak testified that, during that 15 minutes, he was interviewing

Defendant while verifying his license and registration. Homiak testified that it usually takes him approximately 10 to 15 minutes to run a check of license and registration.

Upon the discovery of drugs and other contraband, Homiak took Defendant to the office of the Commonwealth Attorney, where Defendant was read his *Miranda* warnings. According to Homiak, after being given those warnings, Defendant told him that "those guys in Texas" set him up, admitted he had done something wrong, and complimented Trooper Homiak for being professional.

Homiak testified that his patrol car is equipped with video and audio recording equipment. According to the trooper, the video starts recording when he turns on his emergency lights. In this case, Homiak turned on his lights to stop Defendant and believed his recorder was recording the entire stop. When Homiak returned home from the arrest, he testified, he retrieved the video of the stop and removed a plastic tab on it to prevent anything else from being recorded on the tape. Homiak testified that, when he attempted to watch the tape, all he saw was "snow." The trooper then went to the crime lab to see if the recording could be recovered. At that time, he learned that the VCR in his patrol car was defective, and it was replaced. Homiak testified that he believed his equipment was operating prior to learning that the February stop did not record.

Defendant also testified at the suppression hearing. Defendant was questioned about those aspects of Homiak's testimony with which he disagreed. Defendant conceded that the equipment on his car was defective, but stated that he never told the trooper that he was out of work. Defendant stated that the stop lasted longer than Homiak stated, estimating that it lasted 25 to 30 minutes. Defendant also disagreed with the trooper's description of how Debo alerted. According to

6

Defendant, Homiak tapped the vehicle to get Debo to alert. Defendant conceded, however, that he was in the patrol car approximately a car's length away from the truck while the search was being conducted. Defendant contends that the video recording equipment in Homiak's car was "working perfectly" because he saw a blue light on. Defendant conceded that he complimented Homiak for being professional.

## AUTHORITIES

Defendant has challenged the search of his car and seizure of his person under the Fourth Amendment. Traffic stops are deemed seizures for the purposes of the Fourth Amendment. *U.S. v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. Under the Fourth Amendment, warrantless searches are presumptively unreasonable, and the government bears the burden of establishing circumstances to justify them. *U.S. v. Wallen*, 388 F.3d 161, 164 (5th Cir. 2004).

The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 899 (1968) and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed.2d 492 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). Under the two-part *Terry* reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19-20.

Under the second prong of *Terry*, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507. In the course of effectuating the stop, a

police officer may permissibly examine the driver's license and registration and run a computer check to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Id*. at 507-508. An officer may also ask the driver about the purpose and itinerary of his trip. *Id*. at 508. Indeed, the officer's questions need not be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which *Terry's* second prong is aimed." *Id*.

Although an officer's inquiry may be wide ranging, once all relevant computer checks have come back clean, then there can be no more reasonable suspicion, and, as a general matter, any continued questioning thereafter unconstitutionally prolongs the detention. *Id*. at 510. A recognized exception to this rule is when additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled. *Id.* at 507; *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). If this occurs, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *Id.*

## ANALYSIS

Defendant first argues that the search of his truck was unreasonable because the traffic stop was an excessive length. The Court is not convinced by this argument. According to Homiak, once he received the return on Defendant's license and registration and was unable to learn any more about the flag on Defendant's license from either the dispatcher or Defendant, he gave Defendant a warning and told him he was free to go. While there is some dispute as to the length of the stop, Defendant did not offer any evidence to dispute that Homiak spent the time waiting for the license and registration to clear. The Court finds that the stop was not "prolonged beyond the time reasonably required to complete" it. *Illinois v. Caballes*, 543 U.S. 405, 408, 125 S. Ct. 834, 837

(2005). Nothing in the evidence presented to the Court indicates that there was a prolonged detention after the checks came back. According to the evidence presented to the Court, once Trooper Homiak said Defendant was free to go, there was a brief exchange about consenting to a search followed by a quick bathroom break for Debo prior to the run around the truck. There is nothing before the Court to indicate this took more than several minutes, and the Court finds it was not prolonged beyond the time needed.

Moreover, Trooper Homiak stated sufficient facts revealed over the course of the detention to support a reasonable suspicion that Defendant was engaged in criminal activity. "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *U.S. v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003). In this case, the Court finds that Homiak has stated sufficient articulable facts to give rise to a reasonable suspicion that Defendant was involved in illegal activity, including Defendant's change in demeanor when questioned about guns and drugs, Defendant's inconsistent stories about paying a ticket and fine, Defendant's travel on an interstate known to be used in drug traficking, Defendant's residence in a border town known as a place of drug traficking, Defendant's prior criminal charges, Defendant's lack of employment, the unclear flag on Defendant's license check, Defendant's lack of luggage, and the single key in the ignition of the truck. *See id.* (Finding that the facts that a defendant appeared very nervous, was hesitant in answering the most basic questions about his travel plans, lied about why he didn't have a driver's license, was 500 miles away from the road leading to his claimed destination, was on a road associated with drug trafficking, and had been arrested for drug trafficking

in the past were sufficient articulable facts to give rise to a reasonable articulable suspicion that defendant was involved in drug trafficking).

Next, Defendant argues in his written motion that there was no probable cause to search the truck because there was no proof that Debo was trained or reliable. At the hearing, Defendant made no argument and presented no evidence in support of this position that Debo was insufficiently trained or unreliable. Indeed, the evidence presented at the hearing indicated quite the contrary.

A dog alert provides probable cause to search. *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995). In the Fifth Circuit, "a showing of the dog's training and reliability is not required if probable cause is developed on site as a result of a dog sniff of a vehicle." *U.S. v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).

Here, Debo alerted on the truck after conducting a sniff test. Moreover, even though it is not required, Trooper Homiak offered extensive testimony about his training as a canine officer and Debo's canine. According to the evidence presented, Debo and Homiak have been trained and certified. Debo is trained to detect odor of marijuana, including residual odors. Homiak testified that Debo received follow-up training every month and was continually certified since June 2007. Without any argument or evidence to rebut this, the Court finds that Debo and Homiak were adequately trained to conduct the canine search. As to reliability, Homiak testified that, during training, Debo has never made a false positive alert. Homiak conceded on direct examination, however, that, in the field Debo has made a positive alert when there were no drugs detected and that his reliability has been challenged in a Virginia federal court. Defendant made no arguments regarding Debo's reliability. Therefore, because it is not a matter that must be established in the

Fifth Circuit for there to be probable cause, the Court will not address it here.

The Court finds that the evidence here indicates sufficient probable cause based on Devo's alerts on Defendant's vehicle. Here, Homiak testified as to extensive training of Debo as well as a very strong alert by him when circling Defendant's car. The Court finds this was sufficient probable cause to search the truck.

Next Defendant argues that the search was unreasonable because it was conducted without a warrant. Defendant cites to the recent Supreme Court case *Arizona v. Gant*, 129 S. Ct. 1710, 173 L. Ed.2d 485 (April 21, 2009) to argue that years of precedent should be disregarded and the evidence must be suppressed. In that case, the Court held:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.

*Id*. at 1723. However, the Court continues by noting that "a search of an arrestee's vehicle will be unreasonable *unless* police obtain a warrant *or show that another exception to the warrant requirement applies*." *Id.* at 1723-24 (emphasis added). One of such exception to the warrant requirement – as noted in the *Gant* opinion – is set forth in *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). The *Ross* case outlines the probable cause exception for warrantless searches, authorizing a search of any area of a vehicle in which evidence may be found if there is probable cause to believe a vehicle contains evidence of criminal activity. *Id.* As explained by the *Gant* Court, when there is probable cause, "*Ross* allows searches for evidence relevant to offenses other than the offenses of arrest, and the scope of the search is broader." *Gant*, 129 S. Ct. 1720.

As previously noted, the Court finds there was probable cause here based on the various observations of the trooper, including Defendant's inconsistent story about his trip to Virginia, his change in demeanor, and the canine alerts on the door and hood of Defendant's truck. Therefore, under *Ross*, no warrant was required.

Finally, Defendant argues that the evidence should be suppressed because no videotape of the stop was produced. As indicated by Homiak's testimony, the videotape suffered a technical issue and the recording was unrecoverable. There is no evidence before the Court that the defect in the tape or recorder was intentional or known to Homiak at the time of the stop. Because no evidence has been destroyed or withheld from Defendant, the evidence will not be suppressed on that basis.

Therefore, the Court recommends that Defendant's Motion for Suppression of Evidence Seized in Violation of Fourth Amendment Rights (February 2009 Virginia Incident) (Dkt. 75) should be DENIED and Defendant's Motion for Suppression of Evidence Seized in Violation of Fourth Amendment Rights (April 2004, Memphis, Tennessee Incident) (Dkt. 76) should be GRANTED.

Any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c). Pursuant to the agreement of the parties, any objections shall be filed on or before **noon on February 19, 2010.**[1]

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review

---

[1] In light of recent inclement weather forcing a close of the courthouse and clerk's office, this deadline has been extended slightly beyond the time period originally set.

by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 16th day of February, 2010.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE